UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| STUART L. LONGMAN, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:09-CV-01669 (JCH) |
| | : | |
| v. | : | |
| | : | |
| WACHOVIA BANK, N.A. | : | SEPTEMBER 16, 2011 |
| Defendant. | : | |
| | : | |
| | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 36)**

**I.   INTRODUCTION**

Plaintiff, Stuart L. Longman, brings this suit against Wachovia Bank ("Wachovia")[1], claiming that Wachovia willfully violated the Fair Credit Reporting Act ("FRCA") by reporting information it knew to be false to various consumer credit reporting agencies with regard to Longman's account.  In addition, Longman claims that the information Wachovia reported to the credit reporting agencies was defamatory, constituting both libel and slander.

Wachovia filed a Motion for Summary Judgment on all counts, arguing that Longman does not have standing to assert a private right of action under the FCRA and that his common law defamation claim is preempted under the FCRA.  For the following reasons, the court grants summary judgment.

---

[1] Effective March 20, 2010, Wachovia Bank, N.A. and Wachovia Bank Delaware, N.A. were combined into one bank, Wells Fargo Bank, N.A., after Wells Fargo, N.A. successfully applied to the Office of the Comptroller of currency to merge the charters of Wells Fargo, N.A. and Wachovia Bank, N.A. See L.R. 56(a)(1) Stmt. ¶ 1; L.R. 56(a)(2) Stmt. ¶ 1.

## II.    FACTUAL BACKGROUND

Longman was a lot developer with several building projects in Florida.  Def.'s Local Rule 56(a)(1) Stmt. ¶ 1 (hereafter "L.R. 56(a)(1) Stmt."); Pl.'s Local Rule 56(a)(2) Stmt. ¶ 1 (hereafter "L.R. 56(a)(2) Stmt.").  Longman was also a manager of W.W. Land Company, LLC, a company owned by Lurie Investments, LLC.  L.R. 56(a)(2) Stmt. ¶¶ 1–2.  Lurie Investments, LLC was owned by The Longman Family Trust.  L.R. 56(a)(2) Stmt. ¶ 3.  Longman was the administrator of The Longman Family Trust and his wife and children were beneficiaries.  L.R. 56(a)(1) Stmt. ¶ 4;[2] Longman Deposition at 23–24 (hereafter "Longman Depo.").

On April 24, 2006, Longman entered into a Lot Purchase Agreement with W.W. Land Company, LLC to purchase an undeveloped and unoccupied portion of a lot he was developing through W.W. Land Company, LLC.  L.R. 56(a)(2) Stmt. ¶¶ 5–6; Longman Depo at 40–41.  The purchase price for the lot was $250,000.00.  L.R. 56(a)(2) Stmt. ¶ 7.

To finance his purchase of the land, Longman entered into a three-year balloon lot loan Note with Wachovia on June 15, 2006.  L.R. 56(a)(2) Stmt. ¶ 8.  The Note had a principal amount of $231,220.99, with a Mortgage securing the property.  Id.  According to the terms, simple interest was to accrue under the Note on the outstanding principal balance at a fixed annual rate of 7.64%.  L.R. 56(a)(2) Stmt. ¶ 9.  Longman agreed to make interest only payments in thirty-six monthly installments.  L.R. 56(a)(2) Stmt. ¶ 10.

---

[2] Longman denies this fact in his Local Rule 56(a)(2) Statement; however, he does not cite to any evidence to support his denial.  See L.R. 56(a)(2) Stmt. ¶ 4.  In accordance with L.R. 56(a)(3), where a party fails to provide a specific citation to evidence in the record, the court may deem such facts to be admitted.  Where Wachovia's asserted fact is supported by evidence in the record and Longman has failed to provide specific citations to support his denial of the fact, the court will deem the fact to be admitted.

Longman's final payment in the thirty-seventh month was a balloon obligation for the entire principal amount of $231,220.99.  L.R. 56(a)(1) Stmt. ¶ 11;[3] Bizar Aff., Ex. C at ¶ 3.  Longman understood he would have to pay the remaining balance of the Note when the loan matured.  See 56(a)(1) Stmt. ¶ 12;[4] Longman Depo. at 16–18.

On February 16, 2009, Longman notified Wachovia that he was unable to continue making the monthly mortgage payments, and requested that Wachovia reduce the interest rate and lengthen the amortization schedule in order to reduce his monthly payments.  See L.R. 56(a)(2) Stmt. ¶ 13.  On March 13, 2009, Wachovia sent Longman a letter, reminding him that his loan was scheduled to mature on July 15, 2009 and that any remaining balance, plus unpaid interest, would be due at that time.  See L.R. 56(a)(2) Stmt. ¶ 14.  On March 29, 2009, Longman again notified Wachovia that he was unable to pay the loan and requested that Wachovia reduce the interest rate and lengthen the amortization schedule.  L.R. 56(a)(2) Stmt. ¶ 15.

Longman also attempted to obtain an agreement with Wachovia for a short sale of the property.  See L.R. 56(a)(2) Stmt. ¶ 16.  Wachovia denied Longman's short sale loan applications through letters transmitted on April 27, 2009, May 11, 2009, July 6, 2009, July 16, 2009, and July 27, 2009.  See id.  During this time, Longman maintained contact with Wachovia employees in a continued effort to modify his loan or obtain approval for a short sale.  Longman Aff. ¶ 17.  According to Longman, various Wachovia loan servicing employees advised him to continue making monthly interest payments and not to worry about the principal until after a short sale was finalized.  Id. at ¶ 21–22.

---

[3] See supra n. 2.
[4] See supra n. 2.

3

Longman did not pay the balloon (principal) obligation when it came due.  L.R. 56(a)(2) Stmt. ¶ 16.  After the June 15, 2009 maturation date passed, Wachovia began reporting to consumer reporting agencies that Longman was late on making payments due to his failure to pay the balloon obligation.  Longman Aff. at ¶ 24.  On September 9, 2009, Wachovia notified Longman of its intention to foreclose on the property.  L.R. 56(a)(2) Stmt. ¶ 17.  Longman does not dispute the balance owed on the loan.  L.R. 56(a)(1) Stmt. ¶ 26;[5] Longman Depo. at 27.

On September 29, 2009, Longman again requested a short sale, which Wachovia approved on November 6, 2009.  L.R. 56(a)(2) Stmt. ¶¶ 18, 22.  Longman chose not to accept Wachovia's short sale offer because he did not agree with the terms.  L.R. 56(a)(2) Stmt. ¶ 25.

Although Longman failed to pay the balloon obligation when the loan matured, he continued to make monthly payments of $1,436, which Wachovia credited to the balance owed each month.  See L.R. 56(a)(1) Stmt. ¶ 31;[6] Bizar Aff., Ex. M.  Wachovia received notice from Experian and TransUnion on November 18, 2009, and from Equifax on November 19, 2009, that Longman had disputed Wachovia's reporting to the various credit reporting agencies.  L.R. 56(a)(2) Stmt. ¶ 28.  After reviewing its records and Longman's bank statement as submitted in support of his dispute, Wachovia determined on November 19, 2009 that it had accurately reported the late status of Longman's account.  L.R. 56(a)(1) Stmt. ¶ 30;[7] Everett Deposition (hereafter "Everett Depo.") at 73; Bizar Aff., Ex. L at 2–10.

---

[5] See supra n. 2.
[6] See supra n. 2.
[7] See supra n. 2.

Longman filed additional disputes with the credit reporting agencies, which Wachovia received from Equifax and TransUnion on December 1, 2009, from TransUnion on December 31, 2009, and from Experian on February 2, 2010.  L.R. 56(a)(2) Stmt. ¶34.  In response to each dispute, Wachovia again verified its reporting to the agencies.  L.R. 56(a)(2) Stmt. ¶ 35.

## III.   STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment."  United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. County of Nassau,

524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir. 2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## IV.   DISCUSSION

### A.   FCRA Claims

Longman asserts that Wachovia both knowingly reported false information regarding his account to the consumer credit reporting agencies and failed to correct false information.  In addition, Longman asserts that Wachovia failed to perform a reasonable investigation into the dispute after Longman notified Wachovia of the alleged inaccuracies.  See Compl. at ¶¶ 10–12.

#### 1.   Private Right of Action under § 1681s-2(a)

Section 1681s-2 of Title 15 of the United States Code sets forth the responsibilities of those who furnish information to credit reporting agencies.  Section 1681s-2(a) establishes eight duties of furnishers of information, including the duties to provide accurate information and to correct inaccurate information.  See 15 U.S.C. §§ 1861s-2(a)(1)(A), 1681s-2(a)(2)(B) (2010).

The FCRA provides a private right of action for both negligent and willful noncompliance.  See 15 U.S.C. §§ 1681n, 1681o.  This provision is limited, however, in 15 U.S.C. § 1681s-2(c), which provides that sections 1681n and 1681o do not apply to any violation of section 1681s-2(a).  See 15 U.S.C. § 1681s-2(c).  Instead, federal agencies, federal officials, and specified state officials have exclusive authority to

enforce section 1681s-2(a).  See 15 U.S.C. § 1681s-2(d).  Consequently, Congress has not provided a private right of action to challenge a violation of the duties required of a furnisher under 15 U.S.C. § 1681s-2(a).  See Chiang v. Verizon New England, Inc., 595 F.3d 26, 35 (1st Cir. 2010); MacPherson v. JP Morgan Chase Bank, 2010 WL 3081278 at *4 (D. Conn. 2010) ("[T]here is no private right of action for [a violation of section 1681s-2(a)], and individuals aggrieved by a violation . . . must rely on state or federal officials to sue on their behalf.").

Longman argues that section 1681s-2(c) does not specifically state that no private right of action exists.  See Mem. Opp. Mot. Summ. J. at 7.[8]  The language of section 1681s-2(d), however, does specifically state that violations of section 1681s-2(a) "shall be enforced exclusively" by federal or state officials.  See 15 U.S.C. § 1681s-2(d). Therefore, Longman's claim under section 1681s-2 fails as a matter of law. Accordingly, the court grants summary judgment in favor of Wachovia.

> ### 2.   Investigation Following a Dispute

Section 1681s-2(b) imposes a duty upon those who furnish information to credit reporting agencies to conduct an investigation upon notice that a consumer has disputed the accuracy or completeness of reported information.  See 15 U.S.C. § 1681s-2(b)(1).  In order to trigger this duty, however, the furnisher must receive "notice pursuant to section 1681i(a)(2)."  See id.  15 U.S.C. § 1681i(a)(2) requires any credit reporting agency who receives notice of disputed information to report that dispute to

---

[8] Longman also points to this court's decision in Marshall v. Webster Bank, N.A., where the court denied a motion to dismiss a private cause of action raised by a pro se plaintiff.  See Marshall v. Webster Bank, N.A., No. 3:10-cv-908 (JCH), 2011 WL 219693 at *6 (D. Conn. Jan. 21, 2011).  In that case, the defendant failed to raise the issue of whether the FCRA provided a private cause of action for a violation of section 1681s-2(a).  Accordingly, the court did not reach the issue that is at hand here, and the court does not find its earlier decision to be controlling here.

the person who furnished the information and to provide all relevant information received from the consumer disputing the information.  Accordingly, to trigger a furnisher's duty to investigate, the furnisher must receive notice from a credit reporting agency, not from a consumer directly.  See Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009); Elmore v. North Fork Bancorporation, Inc., 325 F.Supp.2d 336, 340 (S.D.N.Y. 2004) ("Even assuming the existence of a private right of action for violation of Section 1681s-2(b), that right of action exists only for violations post-dating the furnisher's receipt of a report *from the credit reporting agency.*") (emphasis in original).

Wachovia argues that at the time Longman filed his complaint, Wachovia's duty to investigate had not yet been triggered.  See Mem. Supp. Mot. Summ. J. at 16. Longman filed his Complaint on October 19, 2009.  See Doc. No. 1.  It is undisputed that Longman did not file his first dispute with a credit reporting agency until on or about November 17, 2009.  L.R. 56(a)(2) Stmt. ¶ 27.  Consequently, Longman's Complaint does not state a cause of action under section 1681s-2(b) because at the time he filed his Complaint, Wachovia had not yet received notice of a dispute from a credit reporting agency and had no duty to investigate Longman's dispute.

The parties agree, however, that Longman subsequently did file two disputes with the credit reporting agencies.  L.R. 56(a)(2) Stmt. ¶¶ 27, 34.  The credit reporting agencies notified Wachovia regarding both disputes.  L.R. 56(a)(2) Stmt. ¶¶ 28, 34. Thus, facts currently in the record could support a cause of action regarding the sufficiency of Wachovia's investigation; however, in order to raise this cause of action, Longman would need to amend his Complaint.  Although Longman has not made a

motion to amend his Complaint, the record at this time is sufficient for the court to consider whether such an amendment would be appropriate.

Generally, courts allow a party to amend its complaint unless the non-movant demonstrates prejudice or bad faith.  See City of New York v. Group Health Inc., 2011 WL 3625097 at *4 (2d Cir. Aug. 18, 2011).  An important consideration when determining whether allowing amendment would be prejudicial is the degree to which the amendment would delay the final disposition of the case.  See Krumme v. Westpoint Stevens, Inc., 143 F.3d 71, 88 (2d Cir. 1998).  A proposed amendment is particularly prejudicial when discovery is complete and a motion for summary judgment is pending. See id. (quoting Ansam Assocs. v. Cola Petroleum, Ltd., 760 F.2d 442, 446 (2d Cir. 1985).

The court is not inclined to grant Longman leave to amend his complaint at this stage.  Discovery in this case has been closed since July 8, 2011, see Doc. No. 54, and Wachovia has filed the instant motion for summary judgment.  In addition, Wachovia put Longman on notice of this deficiency in his Complaint in its Answer, filed January 4, 2010.  See Doc. No. 17.  Given the prejudice to Wachovia in allowing Longman to amend his complaint and the lack of action by Longman, amendment is not appropriate at this stage.  See City of New York, 2011 WL 3625097 at *5 (holding that the district court did not abuse its discretion in denying a motion to amend due to prejudice and undue delay).  Consequently, the court grants summary judgment in favor of Wachovia.

B.    Estoppel

In addition to the claims clearly stated in his Complaint, in his Opposition the Wachovia's Motion for Summary Judgment, Longman asserts that under Florida law,

9

"Wachovia was legally estopped from asserting the loan was past due based upon its conduct." Mem. Opp. Summ. J. at 4.  This assertion fails as a matter of law.

Florida courts have established an equitable principle under which a creditor "may conduct itself in a way that it either waives its right to declare a contract in default or is estopped to do so without first giving the debtor notice of its intent to declare a default." See Montgomery Enters., Inc. v. Atl. Nat'l Bank of Jacksonville, 338 So.2d 1078, 1080 (Fla. App. 1976).  For a debtor to invoke this principle as a defense,[9] the creditor must act in a way that establishes a pattern of conduct the debtor may rely on. See id.  In addition, even when a creditor has established such a pattern of conduct, the creditor may only be estopped from declaring a contract in default without giving the debtor prior notice.  See CJ Restaurant Enters. V. FMS Mgmt. Sys., 699 So.2d 252, 255 (Fla. App. 3 Dist. 1997).  Where parties make an agreement to forbear repayment of money, the agreement must be in writing, express consideration, set forth relevant terms and conditions, and be signed by both parties.  See Fla. Stat. § 687.0304.  See also Coral Reef Drive Land Dev. v. Duke Realty, 45 So.3d 897, 903 (Fla. App. 3 Dist. 2010) (finding that Florida's Banking Statute of Frauds requires a forbearance agreement to be in writing in order to be legally sufficient); Univ. Creek Assocs., II, Ltd. v. Boston Am. Fin. Grp., Inc., 100 F.Supp.2d 1345, 1351 (S.D.Fla 2000) (holding that a promissory estoppel claim cannot be allowed to circumvent the Statute of Frauds).

Longman asserts Wachovia requested that he continue to make monthly interest payments after the balloon payment came due until a short sale agreement could be

---

[9] Longman offers no authority to support his assertion that estoppel may be invoked as a cause of action rather than solely as a special defense.  Because the court finds that Longman is prevented from asserting estoppel as a matter of law, however, the court does not need to reach the issue of whether Longman properly asserts estoppel as a cause of action.

finalized.  See Mem. Opp. Summ. J. at 3.  As a result, Longman asserts that Wachovia "expressly and impliedly agreed to forbear its rights and extend the Loan."  Id.  The Florida Banking Statute of Frauds forbids a debtor from maintaining an action on a credit agreement unless the agreement is in writing.  Fla. Stat. § 687.0304(2).  The statute defines a credit agreement to mean "an agreement to . . . forbear repayment of money."  Fla. Stat. § 687.0304(1)(a).  Longman does not point to any written document in which Wachovia promised not to report him in default to the credit reporting agencies.  Consequently, the Florida Statute of Frauds prevents Longman from asserting that Wachovia is estopped due to a forbearance agreement.  See Univ. Creek Assocs., II, Ltd., 100 F.Supp.2d at 1351.

C.    Defamation Claim

Wachovia asserts that Longman's cause of action for common law defamation is preempted by the FCRA.  See Mem. Supp. Mot. Summ. J. at 20–21.  In response, Longman argues that, because he has alleged that Wachovia's conduct was willful and malicious, his claim is excepted from preemption.  See Mem. Opp. Mot. Summ. J. at 10.

Section 1681t(b)(1)(F) expressly preempts the application of state law with respect to matters regulated under section 1681s-2.  As discussed above, Longman's claim that Wachovia reported false information to the consumer credit reporting agencies asserts a violation of section 1681s-2(a).  Accordingly, section 1681t(b)(1)(F) preempts Longman's claim of state common law defamation, libel, and slander.  See Holtman v. Citifinancial Mortg. Co., Inc., No. 3:05-cv-1571(JCH), 2006 WL 1699589 at *3 (D. Conn. June 19, 2006).

11

Longman argues that, despite the language in section 1681t(b)(1)(F), section 1681h(e) permits recovery for state law defamation. Section 1681h(e) provides:

> [N]o consumer may bring any action . . . in the nature of defamation . . . with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report *except as to false information furnished with malice or willful intent to injury such consumer.* (emphasis added)

In reliance on the emphasized portion of the statute, Longman argues that his state law defamation claim should survive because he has asserted that Wachovia acted maliciously in knowingly providing false information to the credit reporting agencies. See Mem. Opp. Mot. Summ. J. at 10.

Courts have struggled with the relationship between these two provisions, and some courts have agreed with Longman's position. See e.g., Gorman, 584 F.3d at 1166–67 (discussing different approaches); Llewellyn v. Shearson Fin. Network, Inc., 622 F.Supp.2d 1062, 1069 (D. Colo. 2009) (finding a common law claim is not preempted where malice is alleged). The Second Circuit has not resolved this issue. See Premium Mortg. Corp. v. Equifax, Inc., 583 F.3d 103, 106 n.2 (2d Cir. 2009).

This court has previously considered this issue. See Holtman at *4–5. On its face, section 1681t(b)(1)(F) only applies to persons who provide information to consumer reporting agencies. Id. at *4. In contrast, section 1681h(e) only applies to consumer reporting agencies and "those who take adverse actions against consumers based on consumer reports." Id. Consequently, section 1681h(e) only applies where a plaintiff brings a claim against a consumer reporting agency or against someone who has taken adverse action based on a consumer report. Id. See also Ross v. FDIC, 625

12

F.3d 808, 814 (4th Cir. 2010) (setting forth a two-step analysis to determine whether a claim fits within the section 1681h(e) exception).

Here, Longman does not assert that Wachovia is a consumer reporting agency or that Wachovia took action against him on the basis of a consumer report.  <u>See</u> Compl. ¶¶17–22.  As a result, Longman has failed to raise a material issue of fact to support his argument that his state law defamation claim is excepted from preemption under section 1681h(e).  Accordingly, Longman's state law defamation claim is preempted.

Even if the court is mistaken regarding this reading of section 1681h(e), however, Longman fails to raise a material issue of fact to support his assertion that Wachovia acted with malice in reporting to the credit reporting agencies.  Courts considering section 1681h(e) have interpreted malice to mean that a publication was made "'with knowledge that it was false or with reckless disregard of whether it was false or not.'" <u>See</u> <u>Gorman</u>, 584 F.3d at 1168 (quoting <u>Morris v. Equifax, Info. Servs., LLC</u>, 457 F.3d 460, 471 (5th Cir. 2006); <u>Thornton v. Equifax, Inc.</u>, 619 F.2d 700, 705 (8th Cir. 1980)). Longman has not come forward at this stage with any evidence to support his allegation that Wachovia acted maliciously in reporting Longman to be in default.  <u>See</u> <u>Mem. Opp. Mot. Summ. J.</u> at 10; L.R. 56(a)(2) Stmt. Disputed Issues of Material Fact ¶ 11. Consequently, Longman fails to raise a material issue of fact, and summary judgment is appropriate.

**V.    CONCLUSION**

For the foregoing reasons, the court grants defendant's Motion for Summary Judgment (Doc. No. 36).

13

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 16th day of September, 2011.

 /s/ Janet C. Hall
Janet C. Hall
United States District Judge